Affirmed and Memorandum Opinion on Remand filed January 24, 2006









Affirmed
and Memorandum Opinion on Remand filed January 24, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01185-CR

____________

 

SHANTEE D. HAYWARD, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris  County, Texas

Trial Court Cause No. 890,357

 



 

M E M O R A N D U M   O P I N I O N   O N  
R E M A N D








Appellant Shantee D. Hayward appeals her
conviction for murder.  On original
submission, appellant complained that the trial court erred in failing to give
the lesser-included offense instruction for assault.  We reversed the conviction and held that
assault is a lesser-included offense of murder under the Texas Code of Criminal
Procedure Article 37.09, and that the record contained evidence that if the
appellant were guilty, she was guilty only of assault.  Hayward v. State, 117 S.W.3d 5,
14 (Tex. App.CHouston [14th Dist.] 2003), rev=d, 158 S.W.3d 476
(Tex. Crim. App. 2005).  The Texas Court
of Criminal Appeals granted the State=s petition for discretionary
review and reversed our decision, holding the trial court did not err in
denying appellant=s request because an assault using fists
is not a lesser-included offense of murder by stabbing.  See Hayward v. State, 158
S.W.3d 476, 478B80 (Tex. Crim. App. 2005).  The Court of Criminal Appeals remanded the
case back to this court for consideration of appellant=s other
issues.  Finding no merit in these
remaining issues, we affirm. 

I.  Factual and Procedural Background

Police arrived at the complainant=s apartment after
receiving a suspicious‑event call. Two sets of bloody footprints made a
short trail leading away from the front door of the apartment.  Inside, police found the complainant=s dead body in a
hallway near the bathroom.  Blood marks
on the wall suggested that the complainant=s body was dragged
from the living room to the hallway.  The
complainant had been stabbed over fifty times, and there was blood throughout
the apartment.  Although several knives
and broken glass were scattered on the living‑room floor, there were no
fingerprints.  A downstairs neighbor told
police she had heard a violent fight in the complainant=s apartment about
an hour before the police arrived.

Crime Stoppers tips and the complainant=s telephone caller‑identification
device led police to appellant, the complainant=s estranged
wife.  They arrested appellant on an
unrelated parole violation after determining that she was driving the same car
the neighbor had seen speed away from the murder scene.  Appellant initially told police that she did
not know her husband=s whereabouts or when she last saw
him.  However, she later admitted she was
at the murder scene and eventually decided to make a videotaped statement about
the events surrounding the complainant=s death.








According to her statement, appellant went
to the complainant=s apartment with her boyfriend, Marcus
Hawkins, early one morning.  The purpose
of the visit was to ask the complainant for money to buy crack cocaine.  Appellant claims she and Hawkins saw a third
person, known only as AChop,@ as they were
driving toward an open gate at the complainant=s apartment
complex.  To appellant=s surprise, Chop
was also en route to the complainant=s apartment, so he
entered the car and rode with Hawkins and appellant until appellant parked the
car.  According to appellant, she and
Chop exited the car together and walked to the complainant=s apartment.  Hawkins waited in the car.

Appellant said that when the complainant
refused to give her any money, the two of them began to wrestle.  Hawkins came upstairs and also began to
wrestle with the complainant.  According
to appellant=s statement, when the complainant escaped
from Hawkins, Chop came running out of the kitchen and began stabbing the
complainant. Appellant told the police that she and Hawkins fled the scene
after the complainant collapsed behind the front door of the apartment.  Appellant stated that Chop was the only one
who stabbed the complainant.  The police
used computer databases to search for Chop but were unable to find any such person.  They presented appellant with a photo array
of men who went by the name AChop,@ but appellant
said none of them was the individual she had described to police.

A jury found appellant guilty of murder
and assessed punishment at twenty‑five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.

II.  Issues Presented

Other than her sixth issue, which has been
resolved against her by the Court of Criminal Appeals, appellant asserts the
following issues:

(1)     Did
the trial court abuse its discretion by denying appellant=s oral motion for continuance? 

(2)     Was trial counsel ineffective in failing to preserve error on the
trial court=s denial of appellant=s motion for continuance? 

(3)     Is the evidence legally sufficient to support appellant=s murder conviction?[1]









(4)     Was trial counsel ineffective in failing to object to hearsay
testimony? 

(5)     Did the trial court err in overruling appellant=s objection to an allegedly
improper comment made by the State during closing argument?

 

III.  Analysis

A.      Did the trial court abuse its discretion by
denying appellant=s oral motion for continuance?

 

In her first
issue, appellant argues that the trial court abused its discretion in denying
her motion for continuance.  We review
the trial court=s denial of a motion for continuance for
an abuse of discretion.  Hernandez v.
State, 643 S.W.2d 397, 399 (Tex. Crim. App. 1982).  All motions for continuance must be sworn and
in writing.  See Tex. Code Crim. Proc. Ann. art. 29.03,
29.08 (Vernon 1989) (stating that motion for continuance must be in writing and
must be sworn); Dewberry v. State, 4 S.W.3d 735, 755 (Tex. Crim.
App. 1999) (holding that unsworn motion for continuance presents nothing for
review).  There is no abuse of discretion
in failing to grant an oral motion for continuance.  Hightower v. State, 629 S.W.2d 920,
926 (Tex. Crim. App. 1981).  Because the
record contains no written motion for continuance, and because we must decide
the appeal on the record before us, we assume appellant=s motion for
continuance, if any, was oral.  See
Farris v. State, 712 S.W.2d 512, 514 (Tex. Crim. App. 1986).  Finding no abuse of discretion in the denial
of an oral motion for continuance, we overrule appellant=s first issue. 

B.      Was trial counsel ineffective in failing
to preserve error on the trial court=s denial of appellant=s motion for continuance?

 








In her second
issue, appellant argues that her trial counsel was ineffective by failing to
file a sworn written motion for continuance.  Both the United
States and Texas Constitutions guarantee an accused the right to assistance of
counsel.  U.S. Const. amend. VI; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. art. 1.051 (Vernon 2005).  This right necessarily includes the right to
reasonably effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668,
686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Ex parte Gonzales, 945
S.W.2d 830, 835 (Tex. Crim. App. 1997). 
To prove ineffective assistance of counsel, appellant must show that (1)
trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) there is a reasonable probability that the result of the proceeding
would have been different but for trial counsel=s deficient performance.  Strickland, 466 U.S. at 688B92. 
Moreover, appellant bears the burden of proving her claims by a
preponderance of the evidence.  Jackson v. State, 973 S.W.2d 954, 956
(Tex. Crim. App. 1998).  

In assessing appellant=s claims, we apply a strong
presumption that trial counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  We presume counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  When, as in this
case, there is no proper evidentiary record developed at a hearing on a motion
for new trial, it is extremely difficult to show that trial counsel=s performance was deficient.  See Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).  If there is no hearing
or if counsel does not appear at the hearing, an affidavit from trial counsel
becomes almost vital to the success of an ineffective-assistance claim.  Stults v. State, 23 S.W.3d 198,
208B09 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 









The Court of Criminal Appeals has
stated that it should be a rare case in which an appellate court finds
ineffective assistance on a record that is silent as to counsel=s trial strategy, but the legal
standard by which we should determine whether a particular case constitutes
such a rarity appears to be somewhat in flux. 
See Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005)
(stating that facts at hand presented a Arare case@ in which ineffective assistance can
be found on direct appeal based on a record silent as to counsel=s trial strategy); Andrews,
159 S.W.3d at 104 (Keller, P.J., dissenting) (stating that the Court of
Criminal Appeals has been inconsistent in its approaches to
ineffective-assistance claims on direct appeal based on a silent record and
indicating that the court=s approach in Andrews is inconsistent with its
approach in Freeman v. State, 125 S.W.3d 505 (Tex. Crim. App.
2003)).  The Court of Criminal Appeals
recently indicated that appellate courts should find ineffective assistance as
a matter of law if no reasonable trial strategy could justify trial counsel=s conduct, regardless of whether the
record adequately reflects trial counsel=s subjective reasons for acting as
she did.  See Andrews, 159 S.W.3d
at 102.  Even more recently, the Court of
Criminal Appeals returned to an earlier formulation and stated that, absent an
opportunity for trial counsel to explain her actions, appellate courts should
not find ineffective assistance unless the challenged conduct was A>so outrageous that no competent
attorney would have engaged in it.=@  Goodspeed v. State, No. PD-1882-03, __ S.W.3d
__, __, 2005 WL 766996, at *2 (Tex. Crim. App. Apr. 6, 2005) (quoting Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).  Looking to our high court=s most recent pronouncement on the
matter, we follow the legal standard from Goodspeed.

Appellant contends that her trial
counsel was ineffective by failing to file a written motion for continuance in
order to secure the testimony of a possible eyewitness, Carl Brumfield
(allegedly a/k/a AChop@).  Appellant=s argument is essentially that her
counsel failed to present testimony at trial which, if presented, would have
yielded a different outcome.








As stated above, the trial court did
not err in denying counsel=s oral motion for a continuance, because all motions for
continuance must be in writing and sworn. 
See Smith, 676 S.W.2d at 385. 
To establish ineffective assistance based on this failure to file a
written motion, appellant must demonstrate that the trial court would have
erred in denying a sworn written motion for continuance made during trial.  See Vaughn v. State, 888 S.W.2d 62,
74 (Tex. App.CHouston [1st Dist.] 1994), aff=d, 931 S.W.2d 564, 566 (Tex. Crim. App.
1996).  Although counsel failed to
present a proper motion for continuance, this failure does not necessarily
constitute ineffective assistance. 
Counsel=s failure to call witnesses is
irrelevant absent a showing that such witnesses were available and appellant
would have benefitted from their testimony. 
See King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); Hoang
v. State, 825 S.W.2d 729, 732 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d). 
Appellant has made no showing that the testimony of Carl Brumfield or
any other allegedly absent witness would have benefitted her case, and
therefore counsel=s failure to call those witnesses is irrelevant and does not
establish ineffective assistance of counsel. 
See Bernal v. State, 930 S.W.2d 636, 641 (Tex. App.CCorpus Christi 1996, pet. ref=d) (stating A[w]e fail to see how a continuance
would have benefitted appellant . . . we hold that the trial counsel=s decision not seek a continuance was
not deficient conduct@).  Appellant has
established neither deficient performance nor prejudice.  Accordingly, we overrule appellant=s second issue. 

C.      Was trial counsel ineffective in failing
to object to hearsay testimony? 

 

In her fourth
issue, appellant argues that her attorney was ineffective for failing to object
to certain hearsay testimony from Officer L.D. Garretson, the crime scene
investigator.  Appellant argues the
testimony involved a critical fact and that her counsel was ineffective by
failing to make a hearsay objection to the following italicized testimony:

[Prosecutor]:  Now, after that initial conversation with
Shantee Hayward, did you later look for what you believed to be the clothes
that she wore on the date of the murder?

[Officer
Garretson]:  Yes, I did.

[Prosecutor]:  Can you tell us about that, please.

[Officer
Garretson]:  I received information
from an individual in the county jail who was in the same unit as Shantee
Hayward.  Speaking to her, she had told
me that the clothes were thrown out or discarded at an abandoned location where
some abandoned homes or duplexes were on, I believe, it=s West
Airport.  And she didn=t know the exact
location, this is only what she had received from Ms. Hayward, the information.


So I went out to
that location and I did find some abandoned duplexes.  There were maybe three or four duplexes that
still had people living in them, but primarily as an abandoned [sic] was pretty
well ran down.  And I searched that said
area.  In fact, I spent a little more
than a half a day out there searching, never could locate the clothing. 








 

A Strickland
claim must be Afirmly founded in the record@ and Athe record must
affirmatively demonstrate@ the meritorious nature of the claim.  Goodspeed, 2005 WL 766996, at *2; Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (declining to speculate
on counsel=s failure to object to hearsay in light of
silent record).  Direct appeal is usually
an inadequate vehicle for raising such a claim because the record is generally
undeveloped.  Goodspeed, 2005
WL 766996, at *2.  The Atrial counsel
should ordinarily be afforded an opportunity to explain his actions before
being denounced as ineffective.@  Id.; see also Rylander v. State,
101 S.W.3d 107, 111 (Tex. Crim. App. 2003). 
Absent such an opportunity, an appellate court should not find deficient
performance unless the challenged conduct was Aso outrageous that
no competent attorney would have engaged in it.@  Goodspeed, 2005 WL 766996, at *2.  We cannot say that defense counsel=s conduct in this
case met that standard.  See id.  Moreover, isolated failures to object to
improper evidence generally do not constitute ineffective assistance of
counsel.  Ingham v. State, 679
S.W.2d 503, 509 (Tex. Crim. App. 1984); Garcia v. State, 106 S.W.3d 854,
860 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d).  

Finally, even if
counsel=s failure to
object did constitute deficient performance, appellant has not demonstrated
that she suffered any prejudice by showing that the result of the trial
probably would have been different had her trial counsel objected to this
alleged hearsay testimony concerning the informant=s remarks.  It is hard to imagine, in light of all of the
other evidence presented at trial, how appellant would have been prejudiced in
this regard when the clothing mentioned was not even found.  To prove prejudice based on this conduct,
appellant must show by a preponderance of the evidence that there is a
reasonable probability that, but for counsel=s unprofessional
errors, the result of the proceeding would have been different.  Jackson v. State, 973 S.W.2d
954, 956 (Tex. Crim. App. 1998). 
Appellant has not made this showing. 
Accordingly, we conclude that no ineffective assistance has been
demonstrated, and we overrule appellant=s fourth issue. 








D.      Did the trial court err in overruling
appellant=s objection to an alleged improper
comment made by the State during closing argument?

 

In her fifth
issue, appellant contends the State made an improper comment during closing
argument and the trial court erred in overruling her objection to this comment.[2]  More specifically, appellant argues that the
State injected new and harmful facts when it referred to appellant=s recorded
statement that was played to the jury.  

The complaint
pertained to the portion of the State=s closing argument
in which the prosecution stated that appellant, Asays in her own
statement, >Jonas [the complainant] tried to get out
the front door, but we stopped him.  He
fought us, but we stopped him.=@  Appellant=s actual statement
was as follows:








Ms. Hayward:  We really couldn=t hold Jonas, you see what I=m saying?  We couldn=t hold him.  We could not hold Jonas at all, couldn=t hold him.  We wasn=t trying to kill him or hurt him or anything.  We just wanted him to stop putting his hands
on me, that=s allBthat=s all I wanted, that=s all Marcus wanted, for him to
stop hurting me, that was it.  This was
not supposed to happen like this. 

Officer Kennedy:  I understand. (inadudible).  After Jonas comes running back in the living
room and Chop is behind him, what happens then? 

Ms. Hayward:  That=s when he was stabbing him in the B

Officer Kennedy:  In the back? 


Ms. Hayward:  In the back and thenB

Officer Kennedy:  What happened then?

Ms. Hayward:  That=s when he tried to run to the door.


Officer Kennedy:  Who did? 

Ms. Hayward:  Jonas. 

Officer Kennedy:  The door was closed? 

Ms. Hayward:  The front door was closed.

Officer Kennedy:  Okay. Then what happened then?

Ms. Hayward:  Then Jonas was B hadB [sic] his head was facing the
door. 

Officer Kennedy:  Was he laying down, laid out?

Ms. Hayward:  He was on his side and that=s when I sawBthat=s when I really saw the blood on
the wall.  I said, AWe need to get out of here.@

 

(emphasis added)

We conclude that
the argument in issue was not a reasonable deduction or summation of the
evidence.  We further conclude that the
State=s comment during
closing argument injected new facts into the recordCthat appellant
stated that she and Hawkins stopped the complainant from getting out the front
door.  Therefore, the trial court erred
in overruling appellant=s objection.  








Having found that
the argument was improper and the trial court should have sustained appellant=s objection, we
now must consider whether this error warrants reversal.  See Jones v. State, 38 S.W.3d
793, 796B97 (Tex. App.CHouston [14th
Dist.] 2001, pet. ref=d) (holding that while the prosecutor=s comments
injected new facts not within the record and the trial court erred in
overruling appellant=s objection, the error was harmless); Tucker
v. State, 15 S.W.3d 229, 238 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d) (finding that prosecutor=s statement
injecting facts outside the record not so injurious to warrant reversal).

Erroneous rulings
related to jury argument are generally treated as nonconstitutional error
within the purview of Rule 44.2(b).  See
Martinez v. State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000); Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).  Rule 44.2(b) requires any error that does not
affect substantial rights to be disregarded.  See Tex.
R. App. P. 44.2(b).  In other
words, a criminal conviction should not be overturned for nonconstitutional
error if the appellate court, after reviewing the record as a whole, has fair
assurance that the error did not influence the jury or had but a slight effect.
 Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998).  The
following three factors are used to analyze the harm associated with improper
jury argument: (1) severity of the misconduct (the magnitude of the prejudicial
effect of the prosecutor=s remarks), (2) measures adopted to cure
the misconduct (the efficacy of any cautionary instruction by the judge), and
(3) certainty of conviction absent the misconduct (the strength of the evidence
supporting the conviction).  See Mosley,
983 S.W.2d at 259.








We conclude that
the prosecutor=s comment did not amount to severe
misconduct.  While we recognize that it
was improper, the comment was an isolated one, and it was not repeated by the
State.  See Hawkins v. State, 135
S.W.3d 72, 83B85 (Tex. Crim. App. 2004). Next, though
the trial court did not give a proper cautionary instruction, the State did not
emphasize the improper comment.  Compare
Jones, 38 S.W.3d at 797B98 (stating in its
analysis that in consideration of the second Mosely factor, while the
trial court did not make any curative instruction, the state did not emphasize
the error) with Peak v. State, 57 S.W.3d 14, 18B21 (Tex. App.CHouston [14th
Dist.] 2001, no pet.) (holding that the prosecutor=s repeated misstatements
of the law during closing argument was reversible error under Mosley and
that the prosecutor compounded the error by exclaiming, AOverruled.  That means I=m right!  That means I=m right!@).  After appellant=s objection was
overruled, the State moved on with its argument without any further comment on
this issue.  

Finally, in
considering the third Mosley factor, the certainty of the conviction
absent the misconduct, we conclude that the isolated comment in question would
have had little effect on a rational jury=s image of
appellant and her credibility in light of all of the other evidence against
her.  In her videotaped statement,
appellant admitted she and Hawkins were at the complainant=s apartment when
the complainant was murdered.  Appellant
also stated: (1) when the complainant refused to give appellant money, she and
Hawkins wrestled with him; (2) eventually, Hawkins restrained the complainant
so appellant could hit him; and (3) when the complainant got away from Hawkins,
a third person, Chop emerged from the kitchen and began stabbing the
complainant.  

Although appellant
said Chop was coincidentally present and responsible for the murder, appellant
stated she did not recall whether Chop repeatedly stabbed the complainant with
a knife or a piece of glass, or what part of the body Chop stabbed.  Appellant stated that she and Hawkins did not
cover their hands but that Chop may have covered his hands.  Appellant said she and Chop were close and
indicated that she had known him for approximately two years.  Nevertheless, she did not know Chop=s real name, where
he lived, with whom he associated, or any establishments he frequented.  Police officers were unable to locate Chop
after an extensive investigation, and two detectives testified that they
believed appellant invented Chop. 
Detective Garretson also testified that appellant=s gestures
indicating her own hitting motions on the videotaped statement were consistent
with stabbing motions.








Physical evidence
also supported the State=s theory that two people were responsible
for the murder because there were two sets of bloody footprints outside the
complainant=s apartment.  Moreover, although appellant cleaned her car
after the murder, there was blood in her car and on Hawkins=s shoes.  Appellant said that the shoes and clothes she
was wearing when she was arrested were the ones she had worn at the murder
scene.  However, there was no blood on
them, and Detective Garretson testified, based on his training and experience,
that they could not be the same clothes because the absence of blood on them
was inconsistent with the large amount of blood at the crime scene.  Detective Garretson also testified that an
informant told him appellant revealed she hid her bloody clothes at an
abandoned house.  Detective Garretson=s expert testimony
discredited appellant=s statements that a third person was
present, that she hit the complainant (but did not stab him), and that she was
wearing the unstained clothes and shoes at the crime scene.  See Barcenes v. State, 940 S.W.2d 739,
745 (Tex. App.CSan Antonio 1997, pet. ref=d) (holding
evidence that appellant tried to cover up his actions and expert medical
testimony discrediting appellant=s explanation of
injuries was sufficient to sustain murder conviction).  There was also ample evidence to show that
Hawkins and appellant acted together. 
Hawkins and appellant traveled to the complainant=s apartment
together early in the morning to get money from him.  Both appellant and Hawkins wrestled with the
complainant.  Appellant claimed she was
swinging at the complainant while Hawkins restrained him.  Appellant and Hawkins also fled the scene
together after appellant told Hawkins, AWe need to get out
of here.@  They went to Hawkins=s mother=s house, chain
smoked, and then cleaned the car.  In her
videotaped statement, appellant said, Awe [appellant and
Hawkins] wasn=t [sic] trying to kill him@ and Athings was [sic]
not supposed to happen like this.@  Because the record provides fair assurance
that the comment in issue did not influence the jury or had but a slight
effect, we conclude that the trial court=s error in
overruling appellant=s objection to the State=s comment in
closing arguments did not affect appellant=s substantial
rights and therefore, the error is harmless. 
See Mosley, 983 S.W.2d at 259.  Accordingly, we overrule appellant=s fifth issue. 








Having overruled all of appellant=s remaining issues
on remand from the Court of Criminal Appeals, we affirm the trial court=s judgment. 

 

 

 

 

_______________________       

Kem
Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion on Remand filed January 24, 2006.

 

Panel
consists of Justices Yates, Anderson, and Frost.  (Anderson, J., concurs in result only.)

 

Do Not
Publish C Tex.
R. App. P. 47.2(b).

 

 

 











[1]  We will not
address this issue as we addressed it in our prior opinion and the analysis as
stated in that opinion has not changed.  We conclude, for the
reasons stated in our prior opinion, that the evidence is legally sufficient to
support appellant=s conviction, and we overrule this
issue.  See Hayward, 117
S.W.3d at 9B11. 





[2]  The State argues that appellant has
waived this complaint because she failed to supply record references in
connection with her briefing of this issue. 
We disagree.  While a brief must
contain Aappropriate citations to
authorities and to the record,@ the briefing rules found in the Texas Rules of Appellate
Procedure Aare meant to acquaint the court
with the issues in a case and to present argument that will enable the court to
decide the case.@  Bufkin v. State, No. 14-03-01229-CR, __
S.W.3d __ , __, 2005 WL 2675004, at *6 (Tex. App.CHouston [14th Dist.] Oct. 20, 2005,
no pet. h.).  When, as in this case, the
court has had no difficulty locating the pertinent portions of the record
relating to appellant=s fifth issue, it is within our
discretion to review this issue.  Id.