**Brian Douglas PEAK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–99–01137–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

June 14, 2001.

Allen C. Isbell, Houston, TX, for appellants.

S. Elaine Roch, Houston, TX, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## MAJORITY OPINION

SEYMORE, Justice.

Appellant, Brian Peak, was indicted for the offense of sexual assault of a child. TEX. PEN.CODE ANN. § 22.011(a)(2) (Vernon Supp.2000). A jury subsequently found appellant guilty and assessed punishment at eight years confinement in the institutional division of TDCJ. Challenging his conviction, appellant now raises three issues for review. We reverse and remand for a new trial.

### Background

Prior to conviction, appellant resided with his wife, two children, and one step-daughter—complainant Brittany Boone. Sometime during the later part of April 1998, complainant approached appellant and asked for confidential advice. Complainant informed appellant that she recently had sexual intercourse with her boyfriend, without the aid of contraception. She feared pregnancy. Complainant asked appellant if he knew of any way to test for pregnancy. Appellant responded by instructing complainant to inform her mother and seek the opinion of a physician. Fearing her mother's reaction, complainant adamantly refused to follow this advice. Both appellant and complainant considered using a retail home pregnancy test; however, they did not believe it would be accurate because complainant's sexual intercourse was recent.

Hoping to resolve her anxiety over possible pregnancy, complainant asked appellant if he knew of any other means of detecting pregnancy. Appellant responded by telling complainant that she could insert her finger into her vagina and determine whether her hymen had been ruptured during intercourse. Appellant told her she could not be pregnant if her hymen was intact. After the complainant informed him that she did not know how to examine her hymen, appellant offered to perform the examination. The complainant agreed and appellant inserted his finger into her vagina. Appellant was unable to conclude whether her hymen was intact. During trial, appellant admitted having committed the elements of a sexual assault, but argued that his conduct qualified under the statutory "medical care for the child" exception. Attacking his conviction, appellant first argues that the State's evidence was both legally and factually insufficient to defeat his defense of medical care.

### Legal Sufficiency Standard

 In resolving the sufficiency of the evidence issue, we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt. Also, we must determine if the trier of fact would have found against appellant on the defensive issue beyond a reasonable doubt. TEX. PEN. CODE ANN. § 2.03(d) (Vernon 1994); *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim. App.1991); *Lynch v. State*, 952 S.W.2d 594, 598 (Tex.App.—Beaumont 1997, no writ).

Under Texas law, a person commits the offense of sexual assault when he: (1) intentionally or knowingly (2) causes the penetration of the anus or female sexual organ of a child by any means. TEX. PEN. CODE ANN. § 22.011(a)(2)(A) (Vernon Supp. 2000). A "child" means a person younger than 17 years of age who is not the spouse of the actor. *Id.* § 22.011(c). Finally, the defendant may establish a defense to prosecution with proof that his conduct consisted of medical care for the child and did not include any contact between the anus or

sexual organ of the child and his (the defendant's) mouth, anus, or sexual organ of the actor or a third party. *Id.* at (d).

█ Appellant admitted that he intentionally caused the penetration of complainant's vagina with his middle finger. The complainant was fourteen years old on the date of the occurrence in question. Attempting to discredit appellant's defensive issue of medical care, the state introduced testimony from Dr. Rebecca Giardet, a pediatrician who specialized in sex abuse cases. Dr. Giardet testified that examination of a patient's hymen in order to detect pregnancy would not be considered medical care under any known medical standard. Also, she testified that an actor's belief would not override the fact that there is no medical standard to support such examination.

Viewing this evidence in a light most favorable to the prosecution, we find that any rational trier of fact would have found the essential elements of sexual assault, and against appellant on the medical care defense, beyond a reasonable doubt. We overrule appellant's first issue for review.

### Factual Sufficiency Standard

█ In contrast to a legal sufficiency review, a factual sufficiency review requires that the evidence be viewed in a neutral light. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000) (citing *Clewis v. State*, 922 S.W.2d. 126, 134 (Tex.Crim.App. 1996)). We conduct such a review by examining the evidence weighed by the jury that tends to prove the existence of an elemental fact in dispute and comparing it with the evidence tending to disprove that fact. *Johnson*, 23 S.W.3d at 7. Under a factual sufficiency review, a court will set aside a verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Finally, the standard for reviewing the

jury's rejection of a defensive issue is that of an ordinary factual sufficiency review. *See Hernandez v. State*, 938 S.W.2d 503, 509 (Tex.App.—Waco 1997, pet. ref'd) (finding that the jury's rejection of appellant's entrapment defense was subject to an ordinary factual sufficiency standard).

Appellant testified regarding his mistaken belief that a pregnancy could not occur unless a woman's hymen is ruptured. Relying on this belief, appellant told the jury that the only purpose for probing inside complainant's vagina was to determine whether her hymen was intact. Appellant contends such digital probing was medical care. In an attempt to discredit appellant's defense, the State elicited expert testimony from Dr. Giardet. Giardet testified that examining the hymen in an attempt to determine pregnancy would not, under any medical standard, qualify as medical care—even if done by a doctor. Finally, the complainant testified regarding a separate incident wherein appellant, a few months prior to performing the "pregnancy test," fondled her breast and kissed her passionately. Appellant denied the fondling and kissing event.

█ In conducting a factual sufficiency review, we bear in mind that, while a reviewing court may disagree with the fact finder's determination, it must also employ appropriate deference to the fact finder's judgment. *Johnson*, 23 S.W.3d at 7. Moreover, as fact finder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 460 (Tex.Crim.App.1991). Accordingly, we hold that the evidence was factually sufficient to support the jury's finding, beyond a reasonable doubt, that appellant's conduct did not fall within the defensive realm of medical care. Therefore, the evidence at trial was factually sufficient to

sustain appellant's conviction for sexual assault of a child. We overrule appellant's second issue for review.

### Improper Jury Argument

■ In his final issue, appellant argues that his conviction should be reversed because the trial court erred by overruling his objection to improper jury argument. Specifically, appellant points to the prosecutor's closing argument in which he argued that appellant could be convicted of sexual assault without proof that he acted "unlawfully."

■ The four permissible areas of jury argument consist of summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and pleas for law enforcement. *Mijores v. State*, 11 S.W.3d 253, 257 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In making jury argument, counsel may draw all reasonable inferences from the facts in evidence that are "reasonable, fair, and legitimate." *Melendez v. State*, 4 S.W.3d 437, 442 (Tex.App.—Houston [1st Dist.] 1999, no pet.). However, argument stating law contrary to the court's charge is improper. *State v. Renteria*, 977 S.W.2d 606, 608 (Tex.Crim.App.1998) ("Error in jury argument does not lie in going beyond the court's charge, but in stating law contrary to the same."). With this standard in mind, we turn to relevant portions of the jury charge and the State's closing argument.

Central to appellant's improper jury argument issue is the following language in the court's charge:

> Now, if you find from the evidence beyond a reasonable doubt that ... [appellant] did then and there *unlawfully, intentionally, or knowingly* cause the penetration of the female sexual organ of [complainant], a person younger than seventeen years of age and not his spouse, by placing his finger in the female sexual organ of [complainant], then you will find the [appellant] guilty as charged in the indictment. (emphasis added).

Subsequent paragraphs of the charge provide definitions and instructions regarding the medical care defense:

> You are instructed that it is a defense to prosecution of sexual assault of a child that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the defendant or a third party.

> Therefore, if you find from the evidence beyond a reasonable doubt that ... [appellant] did cause the penetration of the female sexual organ of [complainant] with his finger; but you further find from the evidence or have a reasonable doubt thereof that such penetration was done ... in the belief that he was administering medical care, then you will acquit the defendant and say by your verdict "not guilty."

During the State's closing argument, prosecutor Brewer made the following remarks regarding definitions and instructions in the initial paragraph of the charge:

> Brewer: But what [appellant] didn't notice [about the language in the charge] is between the words unlawfully, intentionally, or knowingly. There's not an "and" there. It's a comma. If you did it knowingly, you are guilty.

> Defense: That is not true, Judge. You have to do it unlawfully.

> Court Sustained.

> Brewer: Ladies and gentlemen, you can read English. Each of you read English. If it says you can have an apple comma orange comma or banana, do you have to take the apple

and the orange and the banana? No. If it says you unlawfully comma, intentionally, or knowingly do any of this—excuse me, do all of this, you are guilty. I'm not going to argue with the Court.... When he says oops I did not unlawfully do it but I did intentionally do it but I did knowingly do it [sic], guess what? It only has to be one of the three. He's guilty.

Defense: That's definitely not true. You tell them on the second—

Court: Overruled.

Brewer: Overruled. That means I'm right. That means I'm right.

In the initial paragraph, we note that the disjunctive language of the charge instructed the jury to convict appellant if he acted "unlawfully, intentionally, or knowingly." Viewed in this light, the prosecution's jury argument was proper as it did not state law contrary to the initial paragraph of the court's charge. Subsequent language in the charge, however, includes instructions on the medical care defense and a requirement of acquittal if the jury finds the defense applicable. When we juxtapose the prosecution's jury argument with the above portions of the charge, it is quite clear that the prosecutor purposefully misinterpreted and misstated applicable law. He instructed the jury that it could convict despite a finding that appellant's conduct had a medical purpose. Accordingly, we find that the prosecution's closing argument was improper because he repeatedly stated law contrary to the court's instruction on the medical care defense. *Renteria*, 977 S.W.2d at 608. Therefore, the trial court erred in overruling appellant's objection to the improper jury argument.

 Having found that the trial court should have sustained appellant's objection, we must determine whether this error warrants reversal. TEX.R.APP. P.

44.2. Erroneous rulings related to jury argument are generally treated as non-constitutional error within the purview of Rule 44.2(b). *Martinez v. State*, 17 S.W.3d 677, 692 (Tex.Crim.App.2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998). Rule 44.2(b) requires that we disregard any error not affecting substantial rights. Tex.R.App. P. 44.2(b). Stated differently, "[a] criminal conviction should not be overturned for non-constitutional error if the appellate court, after reviewing the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Finally, courts use the following three factors in analyzing the harm associated with improper jury argument: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Martinez*, 17 S.W.3d at 692–93; *Mosley*, 983 S.W.2d at 259.

## A. Severity of the Misconduct

 Rule 44.2(b) is the guide to our harm analysis in this case. It was taken directly from Federal Rule of Criminal Procedure 52(a) without substantive change. *See* TEX.R.APP.P. 44, Notes and Comments; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998). Therefore, in construing the impact of this rule and its three factors relating to improper jury argument, federal case law provides useful guidance. *Mosley*, 983 S.W.2d at 259. An examination of federal precedent demonstrates that the cumulative effect of improper argument is part and parcel of assessing the severity of the prosecutorial misconduct. *Jones v. State*, 38 S.W.3d

793, 800 (Tex.App.—Houston [14th Dist.] 2001, pet. filed) (citing *United States v. Millar*, 79 F.3d 338, 343 (2nd Cir.1996); *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir.1994)) (Baird, J., dissenting).

The prosecutor's purposeful misinterpretation of the court's charge was manifestly improper.[1] His argument had a theme painting the medical care defense as "*absurd*" or "*ridiculous*," and implying that the jury should disregard that portion of the charge. For example, the prosecutor began his final argument with the following characterization of the medical care defense:

> [Earlier], I said some laws are really silly. Some laws make a lot of sense. In fact, I'd argue that 99.9 percent of our laws make a whole lot of sense. There's some laws on the book from [forty], [fifty], [sixty], a hundred, hundred plus years ago that really don't apply any more. They're kind of silly, but nobody has ever taken them off the books. But you know what? More than 200 years of legal maturing in this country we've gotten rid of, except with the exception of the ones just kind of hanging around, all the stupid laws.

Moments later, the prosecutor revisited this theme, arguing that: "*if [appellant] thought [his conduct] was medical care, you have to let him go. How absurd is that?*" Immediately after the court sustained appellant's objection to this argument as a misstatement of the law, the

prosecutor definatly stated "*[h] ow ridiculous is that?*" A short time later he resumed this criticism of the medical defense with the following rhetorical question: "*Is [the defense] ridiculous? Is it absurd? Do you think that the law is that idiotic? No. It is not.*"[2]

We have no difficulty finding that the prosecutor's defiant misstatements significantly influenced the jury and greatly affected the verdict. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). This is especially true when we consider that appellant admitted having engaged in conduct constituting the offense and relied entirely on the "medical care" defense.

### B. Measures Adopted to Cure the Misconduct

The second *Mosley* factor requires that we examine the court's efforts to cure misconduct. Specifically, we look to whether the court provided any cautionary instruction, and the efficacy of such instruction. In the present case, the court provided no cautionary instruction after overruling appellant's objection to the prosecutor's improper jury argument. Moreover, the prosecutor compounded the effect of this ruling and subsequent inaction by exclaiming: "*Overruled. That means I'm right! That means I'm right!*" Accordingly, we find that the court's failure to take curative measures militates toward a finding of harm against appellant.[3]

---

1. The prosecutor's precise words were "Scratch [the word "unlawfully"] out. I don't need it. It's not part of the law." After appellant objected, the prosecutor reiterated himself by saying "I've now scratched out the word [unlawfully]. You consider it because it's part of the charge the judge gives you. But you can also consider either one of the words [knowingly or intentionally]."

2. Neither do we approve of the following, unnecessarily vulgar, hypothetical scenario

raised by the prosecutor during closing argument: "if [appellant] can find a five-year old that he can talk into, [or] convince in any way to take her panties down, he can get a stick or a dildo or a microphone or a cucumber, [and] put it into her vagina."

3. This analysis is supported by our recent decision in *Jones v. State*. *See Jones v. State*, 38 S.W.3d 793 (Tex.App.—Houston [14th Dist.] 2001, pet. filed). In *Jones*, the appellant argued that the prosecutor's remarks,

## C. Certainty of the Conviction Absent the Misconduct

The final factor of *Mosley* requires that we ascertain the certainty of appellant's conviction absent improper jury argument. Appellant testified that his intended act was for the medical purpose of detecting a tear in complainant's hymen. Notwithstanding his mistaken belief that an intact hymen would prevent pregnancy, appellant testified that he might be able to rule out a pregnancy and assuage complainant's fears. Complainant did not provide testimony controverting appellant's assertion that he urged complainant to inform her mother and/or visit a doctor. Complainant adamantly rejected appellant's advice, fearing her mother would discover the problem. It is undisputed that, following complainant's approval, appellant inserted one of his fingers into her vagina. However, disputed evidence also showed that appellant had, some months prior to the incident, felt complainant's breasts and passionately kissed her on the lips. Based on this record evidence, we believe there was some evidence contradicting appellant's contention that his conduct had a medical purpose. Nevertheless, we are unable to conclude with any certainty that the jury would have rejected this defense absent improper jury argument.

## Conclusion

After applying three *Mosley* factors in conjunction with the harm analysis required in Rule 44.2(b), we do not have fair assurance that the error in overruling appellant's objection had no (or a slight) effect on the jury's finding of guilt. Tex. R.App.P. 44.2(b); *Johnson*, 967 S.W.2d at

417. The prosecutor engaged in serious misconduct by repeatedly misstating the law. This was a likely source of confusion to the jury because the court overruled one of appellant's objections to the prosecutor's improper jury argument while previously and subsequently sustaining similar objections. In addition, the prosecutor's misleading argument encouraged the jury to disregard the charge's provision for the statutory defense of medical care by labeling the defense as "*absurd*" and "*ridiculous*." The trial court's failure to take corrective measures to cure improper argument and the prosecutor's emphasis on the effect of the court's ruling significantly contributed to the harm. Finally, when the record evidence is carefully examined, there is no certainty of conviction absent misconduct during the final argument. Accordingly, appellant's third issue is sustained. The judgment of the trial court is reversed and remanded for a new trial.

HUDSON, Justice, concurring.

The State's attorney is granted potent procedural advantages in closing argument. First, he is afforded the privilege of both opening and closing the arguments. Second, because his closing remarks are not restricted to rebuttal, the prosecutor may advance theories and deductions he knows cannot possibly be answered by opposing counsel. If skillful, he will direct jurors to the most damning evidence, the most condemning conclusions; and his words are last the jury will hear.

Moreover, there are but a handful of topics forbidden to the State's attorney.

during closing arguments, stated matters outside the record and injected new facts bolstering the credibility of the complainant. *Id* at 796. On appeal, the court agreed that this constituted improper jury argument. *Id.* However, the majority concluded in its analy-

sis under the second *Mosley* factor that, while the court did not provide a curative instruction, no harm occurred because the prosecutor did nothing to emphasize the erroneous aspects of the ruling. *Id.* at 797.

He may, with boldness and confidence, sum up the evidence. He may make reasonable deductions from the evidence and is afforded wide latitude in doing so. He may forcefully answer the arguments of opposing counsel. He is permitted to make passionate pleas for law enforcement. In fact, the prosecutor is prohibited only in making remarks that denigrate or directly infringe upon a small number of well established constitutional or statutory rights. Even when the prosecutor strays from the proper course of conduct, the judgment will not be reversed unless the improper remark is extreme or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the accused into the trial proceeding. *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Crim. App.2000). Not surprisingly, few convictions are reversed due to error in argument. When, however, the State's attorney consciously and deliberately assaults the law upon which the defendant has posited his defense, the error is by its very nature "extreme and manifestly improper."

Here, appellant admitted all the elements of sexual assault of a child. He rested entirely on the statutory defense of "medical care." TEX. PEN.CODE ANN. § 22.011(d) (Vernon Supp.2001). In other words, the defendant's sole defensive theory was that he was, at the time of the offense, providing "medical care" to the victim.

In response, the prosecutor could have properly argued that the *evidence* did not support appellant's reliance on the "medical care" defense. For example, the State's attorney could have argued that: (1) appellant possessed a lascivious intent inconsistent with medical care as evidenced by his alleged kissing and fondling of the complainant on another occasion; (2) appellant's lack of medical training, in conjunction with the absence of any medi-

cal emergency, tends to refute his claim of "medical care"; and (3) appellant's admission to the complainant that he did not know what he was doing shortly after he digitally penetrated her vagina demonstrates he had no realistic intention of providing "medical care." However, a prosecutor cannot, as here, argue that the jury should simply ignore the law.

The State's attorney commenced his closing argument by saying "some laws are really silly." He went on to say there are some old statutes "that really don't apply any more ... but nobody has ever taken them off the books." He then said:

> If you find him not guilty because he believed it was medical care, okay. Then you've got to live with that, number one.
>
> ... If that's true, then he gets to go home today. He gets to if he can find a 14–year–old or a 15–year–old that he can or, hell, a five-year-old that he can talk into, convince in any way to take her panties down, he can get a stick or a dildo or a microphone or a cucumber, anything, he can put it into her vagina. And when the police come and arrest him the next day, he can say I believed it was medical care. And you would or the next group of twelve would have to let him go.

Although appellant's objection was sustained, the prosecutor was undeterred. He pursued the same line of argument without regard for the law or fear of the court:

> MR. BLAINE [Appellant's counsel]: That is such a misstatement of the law.
>
> THE COURT: Sustained.
>
> MR. BLAINE: They would have to find—
>
> THE COURT: Sustained.
>
> MR. BREWER [State's attorney]: Ladies and gentlemen, Mr. Blaine can

stand up and complain all he wants; but that's what he's telling you.

His words to you were if the defendant—if you twelve believe that it was the defendant's belief he was administering medical care. Isn't that what Mr. Blaine said? Then you have to let him go. Right? That's what Mr. Blaine is trying to tell you the law is. Now if that's the law, let me repeat—

MR. BLAINE: That's not what I'm telling them. That's what you told them the law is.

THE COURT: Sustained.

MR. BREWER: Let me repeat myself. Then he can go out and get a five-year-old and to this same thing, okay. He can come into Jury Number Two and say I thought it was medical care. And according to what Mr. Blaine says, if the jury believes that he thought it was medical care, not that it was medical care okay, but if he thought is was medical care you got to let him go. How absurd is that?

MR. BLAINE: Judge, I object to him arguing the law is absurd. That's the law you gave 'em.

THE COURT: Sustained.

MR. BREWER: How ridiculous is that?

MR. BLAINE: Judge, that is the law.

THE COURT: Sustained.

The prosecutor briefly suspended his attack upon the statute to erroneously argue that the jury should consider both appellant's post-arrest silence and his failure to offer hearsay testimony in his own defense.[1] Thereafter, the State's attorney renewed his attack on the statute by suggesting that when appellant admitted to intentionally placing his finger in the complainant's vagina, he judicially confessed to committing the offense without regard to the statutory defense:

[By the State's attorney] He got kind of real cute when I showed him the indictment. He said you know what, everything on there is absolutely correct. I admit to it except that word unlawfully.

But what he didn't notice is between the words unlawfully, intentionally or knowingly. There's not an "and" there. It's a comma. If you did it knowingly, you are guilty.

MR. BLAINE: That is not true, Judge. You have to do it unlawfully.

MR. BREWER: Judge—

THE COURT: Sustained.

MR. BREWER: Ladies and gentlemen, you read English. Each of your read English. If it says you can have an

---

1. [By the State's attorney] When was the first time-think about this. This is very important. When was the first time that our wonderful defendant here told anybody about this, his medical intent?
 * * * Did he say it to his own parents who have sat here throughout this trial? No. Didn't say anything about I was just checking her hymen.
 MR. BLAINE: There's no evidence of what he said to his parents.
 MR. BREWER: Judge—
 THE COURT: Ladies and gentlemen, you heard the testimony.
 MR. BREWER: Well, ladies and gentlemen, the parents are obviously here. They could have subpoenaed them or called them or just asked them to come to the stand. They're certainly here. If he had said that, they certainly could have told you about it.
 MR. BLAINE: You know they could not have.
 THE COURT: Sustained.
 MR. BLAINE: You would have objected to it, and it would not have been admissible.
 THE COURT: Sustained.
 MR. BREWER: When is the first time we hear anything about his medical intent? Two days ago. Is that a little fishy to you?

apple comma orange comma or banana, do you have to take the apple and orange and the banana? No.

It says if you unlawfully comma intentionally or knowingly do any of this— excuse me, do all of this you are guilty.

I'm not going to argue with the Court. I'm not going to argue with Mr. Blaine. Read it. That's what it says. If you think this is smoke and mirrors, it's all right here.

When he says oops I did not unlawfully do it but I did intentionally do it but I did knowingly do it guess what? It only has to be one of the three. He's guilty.

MR. BLAINE: That's definitely not true. You tell them on the second—

THE COURT: Overruled.

MR. BREWER: Overruled. That means I'm right. That means I'm right.

By definition, a statutory "defense to prosecution" presumes the defendant committed the acts alleged in the indictment. Thus, the State's attorney made an improper statement of the law, contrary to the court's charge, when he argued that appellant's admission of certain physical acts dispensed with the jury's need to consider the merits of appellant's statutory defense. Accordingly, the trial court erred in overruling appellant's objection.

The State's attorney asked the jury to ignore section 22.011(d) because, in his view, it was silly. When advocating his case, the prosecutor seems to have followed the mistaken adage that the "law is whatever is boldly asserted and plausibly maintained." [2] Rather than adhering to the actual statutes of this state, the court's charge, or the repeated rulings of the trial judge, the prosecutor persisted in his misconduct until, at last, error had been both injected into the proceedings and preserved for our review. To hold the error in

this case was anything other than "extreme and manifestly improper" would sanction the use of intentional error for tactical advantage.

With these comments, I concur.

---

2. JAMES PARTON, LIFE AND TIMES OF AARON BURR 149 (7th ed. 1858).