ACCEPTED
12-14-00080-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/20/2015 1:20:22 AM
CATHY LUSK
CLERK

CASE NO. 12-14-00080-CR

IN THE
TWELFTH COURT OF APPEALS
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/20/2015 1:20:22 AM
CATHY S. LUSK
Clerk

STATE OF TEXAS
V.
FELIPE CASTRO

On Appeal from the

349TH District Court,
Houston County, Texas

(Trial Court No. 13CR-058)
Hon. Pam Foster Fletcher, Judge Presiding

BRIEF OF APPELLANT

WILLIAM M. CURLEY
TBC #05257100
507 N. Church St.
Palestine, Texas 75801
(903) 723-6757

COUNSEL FOR APPELLANT

**BRIEF OF APPELLANT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Felipe Castro, the Appellant, and files this his Brief of

Appeal in the above entitled and numbered cause.

# IDENTITY OF PARTIES AND COUNSEL

**Trial Parties and Counsel**

Felipe Castro, Defendant

William Curley
Attorney for Defendant
507 N. Church St.
Palestine, Texas 75801

State of Texas

Donna Gordon Kaspar
Houston County District Attorney
Trial Counsel for the State
401 East Houston Ave.
Crockett, Texas 75835

**Appellate Parties and Counsel**

Felipe Castro, Appellant

William M. Curley
Attorney for Appellant
507 N. Church St.
Palestine, Texas 75801

State of Texas, Appellee

Donna Gordon Kaspar
Houston County District Attorney
Appellate Counsel for the State
401 East Houston Ave.
Crockett, Texas 75835

# TABLE OF CONTENTS

Page

Table of Contents...........................…………..……....….......…… 3

Index of Authorities..........................…………….…………..……..... 6

Statement of the Case ...........................……………………...…..….. 7

Issues Presented

    Point of Error Number One..........................…………….…..…. 8

The trial court erred in overruling Appellant's Motion to Suppress
the oral recorded statement that Appellant gave to police.

    Point of Error Number Two..........................………..…………..... 8

The evidence is legally insufficient to sustain a conviction for
Aggravated Kidnapping.

    Point of Error Number Three..........................………..…………..... 8

The evidence is legally insufficient to sustain a conviction for
Aggravated Sexual Assault.

    Point of Error Number Four..........................………..…………….... 8

The trial court erred in failing to instruct the jury on the lesser
included offense of Sexual Assault.

    Point of Error Number Five..........................………..…………..... 8

During final argument in the punishment phase of the trial, the
prosecutor made improper jury arguments that were outside the
record.

Point of Error Number Six.......................………..…………..... 8

During final argument in the punishment phase of the trial, the prosecutor misstated the law.

Statement of Facts …………………………………...…………… 9

Point of Error Number One Restated……………………..……… 14

Summary of the Argument………………………………………. 14

Argument……………………………………………………. 15

Point of Error Number Two Restated……………………...…. 18

Summary of the Argument………………………………….…. 18

Argument…………………………………………………… 18

Point of Error Number Three Restated…………………….…. 20

Summary of the Argument……………………………………. 20

Argument…………………………………………………… 20

Point of Error Number Four Restated……………………..…. 22

Summary of the Argument……………………………………. 22

Argument…………………………………………………… 22

Point of Error Number Five Restated……………………..…. 23

Summary of the Argument……………………………………. 24

Argument…………………………………………………… 24

Point of Error Number Six Restated…….……………………………..…. 25

    Summary of the Argument……………………………….……. 25

    Argument……………………………………………………… 26

Prayer.......…….……..…….........................……...……..……… 27

Certificate of Compliance......………….......................................…. 28

Certificate of Service......………….........................................…….. 28

# INDEX OF AUTHORITIES

CASES                                                                    PAGE

| Hernandez v. State, 13 S.W.3d 78 (Tex. App. – Texarkana 2000, no pet) | 15 |
|---|---|
| Nonn v. State, 69 S.W. 3d (Tex. App. – Corpus Christi 2001) | 16 |
| Dowthitt v. State, 931 S.W.2d 244 (Tex. Crim. App. – 1996) | 16 |
| Romero v. State, 800 S.W.2d 539 (Tex. Crim. App. – 1990) | 17 |
| Jackson v. Virginia, 443 U.S. 307 (1979) | 18,19,20 |
| Santella v. State, 939 S.W. 2d 155 (Tex. Crim. App. 1997) | 18,20 |
| Fuller v. State, 73 S. W. 3d 250 (Tex. Crim. App. 2002)) | 19,20 |
| Laster v. State, 275 S.W.2d 512 (Tex. Crim. App. – 2009) | 19 |
| Moore v. State, 802 S.W.2d 367 (Tex. App. – Dallas 1990, pet. ref'd) | 21 |
| Webb v. State, 801 S.W.2d 529 (Tex. Crim. App. – 1990) | 21 |
| Ex Parte Watson, 306 S.W.3d 259 (Tex. Crim. App. – 2010) | 23 |
| Hall v. State, 225 S.W.3d 524 (Tex. Crim. App. – 2007) | 23 |
| Person v. State, 706 S.W.2d 153 (Tex. App. – Houston [1st Dist.] 1986, no pet.) | 24,26 |
| See, Prado v. State, 626 S.W.2d 775 (Tex. Crim. App. – 1982) | 24,25 |
| Peak v. State, 57 S.W.3d 14, 19-21 (Tex. App. – Houston [14th Dist.] 2001, no pet.) | 25,26 |

CODES                                                                    PAGE

| Tex. Code Crim. Pro. Art. 38.22 | 15, 16, 17 |
|---|---|
| Tex. Pen. Code §22.021 | 21 |
| Tex. Pen. Code §1.07 | 21 |
| Tex. Code Crim. Pro. Article 37.09 | 23 |

## STATEMENT OF THE CASE

On March 25, 2013, Appellant was indicted by a Houston County grand jury for the following felony offenses: two counts of Aggravated Sexual Assault, one count of Assault by Strangulation and one count of Aggravated Kidnapping. (C.R. p. 25). A jury was selected on March 17, 2014. ( R.R. Vol. 1). Presentation of evidence began on March 18, 2014. (R.R. Vol. 3). The jury found Appellant guilty of one count of Aggravated Sexual Assault, Assault by Strangulation and Aggravated Kidnapping. The jury acquitted Appellant on one count of Aggravated Sexual Assault. (C.R. pp. 120-124). The same jury sentenced Appellant on the count of Aggravated Sexual Assault to 40 years in the Texas Department of Criminal Justice – Institutional Division; on the count of Assault by Strangulation to 10 years in the Texas Department of Criminal Justice – Institutional Division; and on the count of Aggravated Kidnapping to 40 years in the Texas Department of Criminal Justice – Institutional Division. (C.R. p. 149-151).

For convenience sake, volumes cited from the reporter's record will be referred to as (R.R.). The clerk's record will be referred to as (C.R.).

## ISSUES PRESENTED

### POINT OF ERROR NUMBER ONE

The trial court erred in overruling Appellant's Motion to Suppress the oral recorded statement that Appellant gave to police.

### POINT OF ERROR NUMBER TWO

The evidence is legally insufficient to sustain a conviction for Aggravated Kidnapping.

### POINT OF ERROR NUMBER THREE

The evidence is legally insufficient to sustain a conviction for Aggravated Sexual Assault.

### POINT OF ERROR NUMBER FOUR

The trial court erred in failing to instruct the jury on the lesser included offense of Sexual Assault.

### POINT OF ERROR NUMBER FIVE

During final argument in the punishment phase of the trial, the prosecutor made improper jury arguments that were outside the record.

### POINT OF ERROR NUMBER SIX

During final argument in the punishment phase of the trial, the prosecutor

misstated the law.

## STATEMENT OF FACTS

On Thursday morning, February 7, 2013, Vashae Means returned to her home in Crockett after working the 5 p.m. to 2 a.m. shift at Pilgrim's Pride in Lufkin. She arrived at her home at approximately 4 a.m. Means lived with Appellant, their two minor children and Appellant's adult sister, Gloria Castro. (R.R. Vol. 7, pp. 117-29, 50-53). After arriving home, Appellant accused Means of smelling like a condom. After arguing with her and confirming that Means was having an affair with another man, Appellant began beating Means. Over the next several days until early the following Tuesday morning, Appellant beat Means with his fists, a belt, brooms, a vacuum cleaner, bathroom rod, a chair and broken pieces of the foregoing. Appellant choked Means. He burned her with an electric heater. He cut her with a knife. Appellant carved the name of the man, Reko, with whom Means was having an affair, into her back. Appellant sodomized Means. (R.R. Vol. 7, pp. 31-38, 63, 162-169, 174-177).

Their residence did not have running water. So, the household bathed and did their laundry at the house of Appellant's father. Means did not go over to the house of Appellant's father after the beatings began. Appellant, however, went over on Saturday, Sunday and Monday. While at his father's house on Saturday,

9

Appellant was able to access the internet and read the Facebook postings by Reko concerning the affair with Means. This enraged Appellant and he returned home and assaulted Means again. (R.R. Vol. 7, pp. 76-77, 174-177).

Means was unable to go back to work. On Thursday and Friday, the lady who gave her a ride to work came by the house. Means did not speak to her. Means was alone in the house at the time. Means said she did not leave because she was afraid. (R.R. Vol. 7, pp. 58, 64-66). On Friday, everyone in the house went to the zoo in Lufkin. (R.R. Vol. 7, p. 171).

On Friday, the entire household went to the zoo in Lufkin. (Vol. 7, p. 171). On Sunday, Appellant went to his father's house and fell asleep. (Vol. 7, pp. 80, 181-182).

On Monday Appellant went to obtain his income tax refund of $4500.00. (R.R. Vol. 7, pp. 184-186). The entire household then went to Radio Shack and WalMart. These outings were recorded on security cameras. Appellant initially went in to Radio Shack alone. Appellant then returned with Means and went into Radio Shack and purchased smart phones. Gloria and the children remained in the van. Appellant and Means were in Radio Shack for over an hour. While in the store, Appellant and Means were apart at various times. (R.R. Vol. 6, pp. 9-16).

They purchased three phones, one each for Appellant, Means and Gloria. (R.R. Vol. 7, pp. 60-61.)

The store employees were concerned about Means because of her appearance. One of the employees was alone with Means for a brief time. When Means failed to ask for help or talk to her, the employee left it alone. Means said she said nothing because her lip was busted and bleeding. (R.R. Vol. 7, pp. 9-12, 43).

After leaving Radio Shack, Appellant and his two sons went into WalMart for about 20 minutes while Gloria and Means stayed in the van. (R.R. Vol. 6, pp.22).

After going home, Appellant read more messages on Facebook from Reko.. That night he again confronted Means. Means stated he began hitting her again. Later that night, early Tuesday morning, Means ran from the house. Appellant chased after her, but was unable to catch Means. A neighbor called the police after Means came knocking on her door. (R.R. Vol. 7, pp. 44-45, 191-192).

Means told the police at the scene that Appellant had beaten her, had used various items including an electric heater. The officers could not recall what the items were. (R.R. Vol. 2, pp. 9-11, Vol. 3 p. 7). The police located Appellant at his father's house at 3:30 a.m. The police informed Appellant they were

investigating the assault on Means. Appellant was handcuffed, taken into custody and transported to the Sheriff's office. (R.R. Vol. 2, pp. 18-25). Investigators interviewed Means at 5 a.m. at the hospital. Means told the investigators that Appellant had beaten her with a chair, brooms, sticks, a vacuum cleaner, burned her with a heater, and had sodomized her. (R.R. Vol. 3, p. 30.)

The investigators then went to the Sheriff's office where they interviewed Appellant. Prior to the interview, they photographed Appellant's clothes and person. An audio recording was made of the interview. The investigators gave Appellant his "Miranda" rights, however, they did not warn Appellant he had the right to terminate the interview at any time. Appellant admitted to beating Means but denied having anything but consensual sex with her. (R.R. Vol. 2, pp. 55-56, State's Exhibit 201, Defendant's Exhibit 1). Appellant was never told he was free to leave. (R.R. Vol. 2, pp. 38, 69). Appellant was booked into jail after the interview. (R.R. Vol. 2, p. 66)

Means was suffering from renal failure when she was brought to the Emergency Room in Crockett. This was treated by hydration via an intravenous tube. After being transported to the Tyler hospital, Appellant underwent surgery for the puncture wound to her elbow and her orbital fracture. The last progress note from the Tyler hospital states "no visual problems or difficulties", her elbow

12

has "full range of motion" and "no pain", "renal failure improving", and "no other problems or difficulties". No physician testified regarding long-term medical issues relating to the assault. (R.R. Vol. 6, p. 59, State's Exhibit 205).

Later that morning, the police obtained and executed a search warrant for Appellant's residence. At the residence, the police recover the electric heater, the broken chair, pieces of the broom and rake.

The trial court denied Appellant's Motion to Suppress the statement he gave to police. (R.R. Vol. 4, p. 4).

Appellant requested a jury charge on the lesser included offense of Sexual Assault. The trial court denied this request. (R.R. Vol. 7, p. 222).

During the punishment phase of the trial, the prosecutor made the following statements in closing arguments:

"We see people that have assaulted their spouse or significant other, we have even seen them shoot them, but that's about where the similarities stop in this case. There's a whole lot more that is not typical about this case". (R.R. Vol. 9, p. 59).

"I mean, he did it multiple times he used multiple implements he did multiple things to her you don't usually see sexual assault when somebody just belows [sic] up over something you don't usually see kidnapping when somebody blows up….". (R.R. Vol. 9, p. 60).

13

"He says he is remorseful.  It is typical to have people say they are remorseful."  (R.R. Vol. 9,  p. 61).

"There are plenty of people in prison today doing a whole bunch of time that I suspect would look at this kind of case and go, I cannot believe he did that."  (R.R. Vol. 9,  p. 62).

"…if you separated these three offenses if he committed one and was convicted of it and committed the next one and convicted and committed the next one and convicted he wouldn't be probation there's no way forgiving [sic] him probation then AND the minimum would be a whole lot higher be more like 25 to 99 or life…".  (R.R. Vol. 9,  pp. 62-63).

All objections to these arguments were overruled other than the first one.

## POINT OF ERROR NUMBER ONE RESTATED

The trial court erred in overruling Appellant's Motion to Suppress the oral recorded statement that Appellant gave to police.

## SUMMARY OF THE ARGUMENT

Appellant's statement was a product of custodial interrogation.  Appellant was not advised that he had the right to terminate the interview at any time.  Tex. Code Crim. Pro. Art. 38.22 states that for a statement to be admissible, this warning must be given.

14

## ARGUMENT

Tex. Code Crim. Pro. Art. 38.22 states:

"Sec. 3.(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless…

"(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning."

Subsection (a) of Section 2 requires that the accused be given the following warning:

"(5) he has the right to terminate the interview at any time…".

In the present case it is undisputed that Appellant was not given the above warning. Although the courts have held that "substantial compliance" is sufficient to meet the requirements of Art. 38.22, the courts have held that the complete omission of the above warning renders the statement inadmissible at trial. Hernandez v. State, 13 S.W.3d 78 (Tex. App. – Texarkana 2000, no pet),

Nonn v. State, 69 S.W. 3d (Tex. App. – Corpus Christi 2001), aff'd 117 S.W.3d 874 (Tex. Crim. App. 2003).

At the trial level, the State advanced the following theories to circumvent the requirements of Art. 38.22:

1. Appellant was not in custody

2. The exception in Art. 38.22 §3(c) applies in that the statement contained assertions of facts which were found to be true and conduced to establish the guilt of Appellant.

The Court of Criminal Appeals has outlined 4 general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. Dowthitt v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. – 1996).

In the present case the facts showing that Appellant was in custody at the time he made his statement are as follows: the police had identified Appellant as

having beaten Means; the police had chased down Appellant at his father's house and had placed Appellant in handcuffs at his father's house; the police had informed him they were investigating the assault of Means; the police transported Appellant to the Sheriff's Office handcuffed in a patrol car; the police then went to the hospital and interviewed Means and obtained more specific facts concerning the assault on Means by Appellant; hours after taking Appellant into custody, the police returned to the Sheriff's Office and photographed Appellant's clothes and person; the police then took the statement from Appellant and formally charged him immediately afterward.

Regarding the exception found in Art. 38.22 §3 (c), the Court of Criminal Appeals has held that the requirement contained therein of facts or circumstances "found to be true", means facts or circumstances about which the police are unaware at the time of the confession. Romero v. State, 800 S.W.2d 539, 544-545 (Tex. Crim. App. – 1990). The confession must reveal facts and circumstances which lead to the discovery of items previously unknown to the State. Romero, at 545.

In the present case, the police were aware of the various items that Appellant had used during the assault on Means from the interviews with Means that had occurred prior to the taking of Appellant's statement.

Appellant requests that the Court sustain Point of Error Number One.

## POINT OF ERROR NUMBER TWO RESTATED

The evidence is legally insufficient to sustain a conviction for Aggravated Kidnapping.

## SUMMARY OF THE ARGUMENT

Aggravated Kidnapping requires the State prove that Appellant had the specific intent to prevent Means' liberation by secreting or holding her in a place where she was not likely to be found. The evidence shows that during all relevant times, Appellant and Means were in public places together, or at Means'residence with other people present, or Means was alone at her residence with freedom to stay or leave.

## ARGUMENT

In reviewing a record for legal sufficiency, the court should view the evidence in the light most favorable to the verdict, and then determine whether any rational finder of fact could have found all of the evidential elements of the offense proven beyond reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Santella v. State, 939 S.W. 2d 155 (Tex. Crim. App. 1997). The Jackson standard measures evidentiary sufficiency against the "substantial"

18

elements of the criminal offense as defined by state law. <u>Jackson,</u> at f.n. 16; <u>Fuller v. State</u>, 73 S. W. 3d 250, at 252 (Tex. Crim. App. 2002).

To obtain a conviction for Aggravated Kidnapping, the State was required to prove that Appellant had the specific intent to prevent Means' liberation by secreting or holding her in a place where she was not likely to be found. <u>Laster v. State,</u> 275 S.W.2d 512, 521 (Tex. Crim. App. – 2009). During the entire 5 day period in which Appellant assaulted Means, there is no evidence that Appellant had the intent to secret Means. Means was left at home alone during this time period on several occasions. A co-worker came by to give Means a ride to work when Means was alone and indeed observed the co-worker. Appellant and Means went into Radio Shack where Means was left alone with the store personnel. Means was never bound or locked in at any location. Means purchased a cellphone for herself while she was with Appellant that gave her the opportunity to communicate with anyone and everyone. Although Appellant engaged in assaultive behavior toward Means, there is no evidence to support that he had the intent to hide or secret Means so that she could not be found.

Appellant requests that the Court sustain Point of Error Number Two.

## POINT OF ERROR NUMBER THREE RESTATED

The evidence is legally insufficient to sustain a conviction for Aggravated Sexual Assault.

## SUMMARY OF THE ARGUMENT

One of the required elements of Aggravated Sexual Assault is proof that Appellant caused serious bodily injury or attempted to cause the death of Means. Although, Appellant caused bodily injury, the evidence is insufficient to show serious bodily injury or an attempt to cause the death of Means.

## ARGUMENT

In reviewing a record for legal sufficiency, the court should view the evidence in the light most favorable to the verdict, and then determine whether any rational finder of fact could have found all of the evidential elements of the offense proven beyond reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Santella v. State, 939 S.W. 2d 155 (Tex. Crim. App. 1997). The Jackson standard measures evidentiary sufficiency against the "substantial" elements of the criminal offense as defined by state law. Jackson, at f.n. 16; Fuller v. State, 73 S. W. 3d 250, at 252 (Tex. Crim. App. 2002).

A necessary element of Aggravated Sexual Assault as alleged in the indictment is that Appellant caused serious bodily injury or attempted to cause

the death of Means. (C.R. p. 26 , Tex. Pen. Code §22.021(a)(2)(A)(i)). There is no evidence in the record that Appellant attempted to cause the death of Means. "Serious bodily injury" is defined as bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex. Pen. Code §1.07(a)(46).

The existence of serious bodily injury is determined by the injury as inflicted. The State may not transform an injury into serious bodily injury through use of speculative testimony about what might have occurred had the injury not been medically treated. Moore v. State, 802 S.W.2d 367, 370 (Tex. App. – Dallas 1990, pet. ref'd). The State should provide medical evidence of the degree of injury; the victim's testimony alone is generally not sufficient to prove this element. Webb v. State, 801 S.W.2d 529, 532-533 (Tex. Crim. App. – 1990).

Means was suffering from renal failure when she was brought to the Emergency Room in Crockett. This was treated by hydration via an intravenous tube. After being transported to the Tyler hospital, Appellant underwent surgery for the puncture wound to her elbow and her orbital fracture. The last progress note from the Tyler hospital states "no visual problems or difficulties", her

elbow has "full range of motion" and "no pain", "renal failure improving", and "no other problems or difficulties". No physician testified regarding long-term medical issues relating to the assault.

Appellant requests that the Court sustain Point of Error Number Three.

## POINT OF ERROR NUMBER FOUR RESTATED

The trial court erred in failing to instruct the jury on the lesser included offense of Sexual Assault.

## SUMMARY OF THE ARGUMENT

Sexual Assault is a lesser included offense of Aggravated Sexual Assault. The jury could have rationally found that Means did not suffer serious bodily injury, so as to find Appellant was guilty only of the lesser included offense of Sexual Assault.

## ARGUMENT

The determination of whether a lesser included offense instruction must be given requires a two-step analysis. First, it must be determined whether the requested offense has the relationship of a lesser included offense to the offense charged in the indictment. Second, the evidence at trial must be considered to determine whether there is a basis for the jury to conclude that the defendant may be found guilty only of the charged offense, which means that there must be a

reasonable view of the evidence from which the jury may conclude the defendant is not guilty of the charged offense but possibly guilty of the requested lesser included offense.

An offense is a lesser included offense of another offense, under Article 37.09(1) of the Code of Criminal Procedure, if the indictment for the greater-inclusive offense alleges all of the elements of the lesser-included offense. Ex Parte Watson, 306 S.W.3d 259, 273 (Tex. Crim. App. – 2010). In the present case sexual assault is a lesser included offense of aggravated sexual assault in that the indictment alleges all of the elements of sexual assault.

Anything more than a scintilla of evidence is sufficient to entitle the defendant to an instruction on the lesser included offense. Hall v. State, 225 S.W.3d 524, 535-536 (Tex. Crim. App. – 2007). In the present case, there existed a fact question as to whether Appellant had caused seriously bodily injury or attempted to caused the death of Means. (See Point of Error Number Three above).

Appellant requests that the Court sustain Point of Error Number Four.

## POINT OF ERROR NUMBER FIVE RESTATED

During final argument in the punishment phase of the trial, the prosecutor made improper jury arguments that were outside the record.

## SUMMARY OF THE ARGUMENT

During final argument in the punishment phase of the trial, the prosecutor injected facts outside the record. The improper arguments were extreme and manifestly improper and injected new and harmful facts into the trial.

## ARGUMENT

Jury arguments should be confined to the following areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. Argument that falls outside these areas and that are extreme or manifestly improper or inject new and harmful facts, and are reversible on appeal. Person v. State, 706 S.W.2d 153, 154 (Tex. App. – Houston [1st Dist.] 1986, no pet.).

There was no evidence in the record that the sexual assault and kidnapping are "not seen" or "not typical" in crimes involving family violence. Nor is there evidence that it is typical for a defendant to be remorseful. Nor is there evidence in the record that there are a whole lot of inmates in prison that would look at Appellant's conduct and find it so heinous as to recoil in disbelief.

The prosecutor's arguments are similar to the improper arguments made in Prado v. State, where the court held it was reversible error for the prosecutor to argue if the community knew what the defendant did, it would want the defendant

to go to the penitentiary. See, Prado v. State, 626 S.W.2d 775 (Tex. Crim. App. – 1982).

There is no assurance the prosecutor's improper argument had no effect on the jury's assessment of punishment. Not only were new and harmful "facts" put before the jury, but the trial court compounded the error by overruling the objections. There is no certainty that the jury would have assessed the 40 years on the Aggravated Sexual Assault and Aggravated Kidnapping charges and 10 years on the Assault charge, absent the error. Peak v. State, 57 S.W.3d 14, 19-21 (Tex. App. – Houston [14th Dist.] 2001, no pet.)..

Appellant requests that the Court sustain Point of Error Number Five.

## POINT OF ERROR NUMBER SIX RESTATED

During final argument in the punishment phase of the trial, the prosecutor misstated the law.

## SUMMARY OF THE ARGUMENT

During final argument in the punishment the prosecutor misstated the law as it applied to this case. The improper arguments were extreme and manifestly improper in that the jury was essentially told that 25 years to life was the range of punishment.

# ARGUMENT

Jury arguments should be confined to the following areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. Argument that falls outside these areas and that are extreme or manifestly improper or inject new and harmful facts, and are reversible on appeal. Person v. State, 706 S.W.2d 153, 154 (Tex. App. – Houston [1st Dist.] 1986, no pet.).

The prosecutor told the jury that the law states that if Appellant had been tried separately for the three crimes for which he was convicted, he would be facing a minimum sentence of 25 years. This was misleading to the jury, in that Appellant's range of punishment ranged from 2-10 years for the Assault by Strangulation, and 5-99 years or life for the Aggravated Kidnapping and Aggravated Sexual Assault. In addition, he was eligible for probation on each conviction. The prosecutor's argument was a misstatement of the law and designed to confuse and mislead the jury.

It is improper for the prosecutor to incorrectly state the law contrary to the trial court's instruction. Peak v. State, 57 S.W.3d 14, 19 (Tex. App. – Houston [14th Dist.] 2001, no pet.). There is no assurance that this misstatement

of the law had no effect on the jury's assessment of punishment. Not only was the jury misled, but the trial court compounded the error by overruling the objection. There is no certainty that the jury would have assessed the 40 years on the Aggravated Sexual Assault and Aggravated Kidnapping charges and 10 years on the Assault charge, absent the error. See, Peak, supra at 19 – 21.

Appellant requests that the Court sustain Point of Error Number Six.

PRAYER

WHEREFORE, PREMISE CONSIDERED, Appellants prays this Honorable Court to sustain the point of errors raised above, vacate the judgment and reverse and render an acquittal or remand the case for new trial.

Respectfully submitted,

William M. Curley, P.C.
507 N. Church St.
Palestine, Tx  75801
(903) 723-6757
(903) 727-0554

By:/s/ William M. Curley
    William M. Curley
    State Bar No. 05257100
    Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Tex. R. App. Pro. 9.4(i)(3), in reliance on the word count of the computer program used to prepare this document, the word count of this document is 4,936.

/s/ William M. Curley
William M. Curley

## CERTIFICATE OF SERVICE

I certify that a true copy of Appellant's Brief was served in accordance with rule 9.5 of the Texas Rules of Appellate Procedure on each party or that party's lead counsel as follows:

Party: State of Texas

Lead attorney:  Donna Gordon Kaspar

Address:     401 East Houston Ave., Crockett, Tx 75835

Method of service:  email to dgordon@co.houston.tx.us

Date of service:  April 20, 2015

/s/ William M. Curley
William M. Curley