**Affirmed and Memorandum Opinion filed October 5, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00177-CR

### RYAN JIVARO WHITAKER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1463151**

## MEMORANDUM OPINION

A jury convicted appellant of first-degree murder. Tex. Penal Code Ann. § 19.02(b), (c). The trial court assessed punishment at imprisonment for 25 years. Tex. Penal Code Ann. § 12.32. In three issues, appellant argues (1) the evidence was insufficient to support his conviction, (2) the trial court reversibly erred by denying appellant's motion for mistrial and overruling certain objections during the State's closing argument, and (3) the trial court reversibly erred by omitting a required instruction on the presumption of reasonableness from the jury charge.

We affirm.

## I.   BACKGROUND

It is undisputed that appellant intentionally caused the injuries that resulted in the death of the complainant, Anthony Kincaid, on April 1, 2015; the central question at trial was whether appellant acted in self-defense. While no one saw the altercation between appellant and Kincaid start, Kincaid's neighbors, the Camposes, witnessed portions of a fight between the two men. Maria Campos testified that she heard someone outside her house asking for help. She looked out the window and saw blood on her porch and also saw appellant[1] and Kincaid fighting on the ground. Appellant was on top of Kincaid and was hitting him and banging him into the ground; Kincaid was trying to push appellant off of him. Kincaid escaped and ran away, after which appellant ran after Kincaid, tackled him, and began hitting and punching him. At no point did Maria see Kincaid act in an aggressive manner. Maria witnessed police arriving and telling appellant several times at gunpoint to get off of Kincaid; appellant did not comply at first, but instead continued hitting Kincaid. Maria did not see anything in appellant's hand.

Maria's husband Miguel gave a similar account. He was awakened by someone banging on the door and desperate screams of "Help me." He opened the blinds and saw a lot of blood and two men fighting. Kincaid "was on the bottom was screaming help desperately, right, like crying; and the person on top was giving him blows." When police arrived, Kincaid was not responsive.

When Officer Michael Jones arrived on the scene, he saw appellant on top of Kincaid with his hands in the area of Kincaid's neck. Kincaid appeared nonresponsive; his hands were on the ground, and Jones did not see him move.

---

[1] The Camposes identified appellant as a man wearing a camouflage jacket; it is undisputed that appellant was wearing such a jacket on the date in question.

Jones drew his firearm and several times commanded appellant to stop what he was doing and show his hands. Appellant was noncompliant for 15 or 30 seconds before raising his hands and dropping what appeared to be a knife. A broken kitchen knife, described as a fillet or boning knife, was found at the scene. After another officer arrived at the scene, appellant said of Kincaid, "He came at me with a knife. He tried to kill me." He repeated similar allegations to a third officer at the scene.

Kincaid had deep cuts all around his neck and severe blood loss. When paramedics arrived, Kincaid had no pulse and was not breathing; he was pronounced dead at the scene. Kincaid's cause of death was multiple sharp-force injuries, specifically being "cut and stabbed with a knife." Kincaid sustained approximately 140 sharp-force injuries, including injuries to his jugular vein and internal carotid artery, along with approximately 40 blunt-force injuries.

While there was blood on appellant's jacket, officers at the scene did not see any injury to appellant. A paramedic at the scene did not find evidence of any injuries or significant bleeding to appellant, only minor cuts, including a scratch on appellant's head. Medical records stated that appellant had a broken finger, an abrasion on his knee, and a closed-head injury, and that appellant was advised that he had a concussion.

Officer John Black, a homicide investigator, interviewed appellant on the day of the incident. Appellant told Black that he "tried to kill" Kincaid because he was "scared for [his] life." He stated that, after he asked to borrow Kincaid's phone, Kincaid became belligerent and brandished a kitchen knife, after which appellant struck Kincaid in the face and a fight ensued. When asked how he tried to kill Kincaid, appellant responded, "Colombian necktie," which appellant described as cutting the throat "all the way around." Black testified that, when

3

appellant said "Colombian necktie," appellant "smiled and raised his eyebrows at me with what appeared to be pleasure."

## II. ANALYSIS

### A. Sufficiency of the evidence

In issue 1, appellant argues that the evidence was legally insufficient to support his conviction because appellant presented evidence of self-defense and the State did not "disprove" the defense. Generally, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a). As relevant here, a person is justified in using deadly force against another "(1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary (A) to protect the actor against the other's use or attempted use of unlawful deadly force[.]." Tex. Penal Code Ann. § 9.32(a).

"[I]f the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." Tex. Penal Code Ann. § 2.03(d). Specific to self-defense, the court of criminal appeals has explained that the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Id.* By contrast, the State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Id.* (quotation omitted). Thus, "[i]n resolving the sufficiency

4

of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id.* at 609 (quotation omitted).

Appellant does not contend that he did not intentionally cause the wounds that resulted in Kincaid's death. Accordingly, a rational juror could have determined that the State presented legally-sufficient evidence to prove the essential elements of murder.[2] Could a rational juror have also found against appellant on the self-defense issue? As above, to prove self-defense, a defendant is required to show, among other things, that he "reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31. Appellant's claim of self-defense rests on statements he made to peace officers that Kincaid attacked him with a knife. The jury, however, was free to reject this evidence. *See Braughton*, 569 S.W.3d at 612–13 (jury may rationally disbelieve defendant's claims of self-defense). Moreover, while no one saw the altercation start, the witness testimony indicates that appellant was hitting Kincaid while on top of him, Kincaid escaped and appeared to run away, and appellant jumped back on him and continued to attack him. The jury could have concluded these acts were not consistent with self-defense, nor was appellant's attempt to give Kincaid a "Colombian necktie." Viewing the evidence in the light most favorable to the verdict, a reasonable juror

---

[2] Penal Code section 19.02 states in relevant part that a person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b).

could have determined beyond a reasonable doubt that appellant murdered Kincaid and was not acting in self-defense.

We overrule issue 1.

## B. Closing argument

In issue 2, appellant makes various arguments concerning prosecutorial misconduct during the State's closing argument.

### 1. Reasonableness of self-defense

Appellant first argues the trial court erred by overruling his motion for a mistrial after the following portion of the State's closing argument:

> [THE STATE]: When we talked about reasonable doubt—excuse me, when we talked about self-defense in this case, you have a Charge that's about 15 pages long that's trying to say this: Self-defense must be proportional. It must be reasonable. It must be immediately necessary, and it must be in response to deadly force. And we talked about what reasonable meant; and I made a joke during voir dire that if you taught a class on how to give PowerPoints, I'd probably be in trouble for this slide. We talked about reasonable in this situation. Mr. Savoy and Mr. Hamm, they're talented lawyers. And they've over and over tried to tell you that reasonable is from the perspective of Ryan Whitaker. That is not true.
>
> [DEFENSE COUNSEL]: Objection, Your Honor, misstatement of the law.
>
> THE COURT: Sustained. Ladies and gentlemen, the law is as given to you in the Court's Charge, not what the lawyers tell you.
>
> [DEFENSE COUNSEL]: Ask the jury to disregard his last statement, Your Honor.
>
> THE COURT: Jury, disregard the last statement of the Prosecutor.
>
> [DEFENSE COUNSEL]: Move for mistrial, Your Honor.

The trial court then called the lawyers to the bench for a discussion before allowing the State to continue its closing argument, implicitly denying the motion for

mistrial. Tex. R. App. P. 33.1(a)(2)(A) (error preserved for review if trial court ruled on motion "either expressly or implicitly"). Appellant argues a mistrial was warranted because the State misstated the law by telling the jury that the reasonableness of the self-defense inquiry was not considered "from the perspective" of appellant.

Because the trial court sustained appellant's objection and instructed the jury to disregard the State's comments, the question before this court is whether the trial court abused its discretion by denying appellant's motion for a mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004) ("The only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial. Under those circumstances, the proper issue is whether the refusal to grant the mistrial was an abuse of discretion."). To evaluate whether the trial court abused its discretion by denying the motion for mistrial, we balance three "*Mosley*" factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Mistrial is the appropriate remedy when the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011).

The first *Mosley* factor evaluates the severity of the State's misconduct. The court's charge instructs the jury that, "By the term 'reasonable belief' as used herein is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." By telling the jury that the

7

reasonable-belief inquiry was not considered "from the perspective" of appellant, the State may have been attempting to explain that the law draws a distinction between (1) what a reasonable person in the defendant's shoes would have believed versus (2) what a specific defendant employing his own particular definition of "reasonableness" would have believed. *Cf. Mays v. State*, 318 S.W.3d 368, 383 (Tex. Crim. App. 2010) ("The law examines 'reasonableness' from the perspective of an ordinary and prudent person, not from that of a paranoid psychotic[.]"). While falling short of egregious misconduct, the State's explanation nonetheless had the potential to cause confusion among the jurors as to how to evaluate reasonable belief.

The trial court, however, took prompt remedial measures, sustaining appellant's objection, explaining to the jury that "the law is as given to you in the Court's Charge, not what the lawyers tell you" and instructing the jury to disregard the prosecutor's statement. An instruction to disregard will generally cure harm stemming from improper jury argument unless the comments are "so indelible that the jury would simply ignore the trial court's specific and timely instruction to disregard them." *Archie*, 340 S.W.3d at 741. In addition, the trial court twice called the parties to the bench to instruct the prosecutor to correctly state the law, after which the prosecutor told the jury, without objection, "As we were just saying, the law is from the shoes of the Defendant, would an ordinary and prudent person believe his actions are reasonable."

Finally, we consider the certainty of conviction absent the misconduct. Given that the misconduct was not egregious, and the trial court took prompt and effective measures to cure the misconduct, it does not appear on this record that the misconduct would have affected the jury in its weighing of the evidence.[3] We

---

[3] Appellant argues our decision in *Peak v. State*, 57 S.W.3d 14 (Tex. App.—Houston

conclude the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

## 2. Use of force immediately necessary

Appellant next argues the trial court reversibly erred by overruling his objections during the following portion of the State's closing argument:

> [THE STATE:] If anybody here says yes to that, then you go to is it also immediately necessary. And the question of immediately necessary is not one of is everything immediately necessary. The question is is every action immediately necessary?
>
> [DEFENSE COUNSEL]: Objection. Once, again, Your Honor, that's a misstatement of the law.
>
> THE COURT: That's overruled.
>
> [THE STATE]: Is every action immediately necessary? When you hear that Ryan Whitaker—from Mr. and Mrs. Campos that Ryan Whitaker tracked Mr. Kincaid down as he tried to flee for his life and continued to murder him, was that immediately necessary for Ryan Whitaker? Then you ask yourself, once the police arrived and are holding Mr. Whitaker at gunpoint, shouting stop, drop that, show me your hands, and he continues to murder a man in his own neighborhood, was every single stab wound inflicted when the police were there immediately necessary?
>
> [DEFENSE COUNSEL]: Objection, once again, Your Honor. That's not the law.
>
> THE COURT: Overruled.
>
> [DEFENSE COUNSEL]: It doesn't say every single stab wound needs to be necessary.
>
> THE COURT: Overruled.

---

[14th Dist.] 2001, no pet.), compels a different result. In *Peak*, we concluded a mistrial was warranted when the prosecutor "engaged in serious misconduct" by repeatedly implying the jury should disregard a portion of the charge and the trial court "fail[ed] to take corrective measures to cure improper argument," including overruling one objection that the prosecutor then emphasized. *See id.* at 19–21. We conclude *Peak* is distinguishable on its facts.

Appellant argues the prosecutor misstated the law when he asked the jury whether "every action" and "every single stab wound" was "immediately necessary." Earlier in his closing argument, however, the prosecutor asked the jury, without objection, "Was every single one of those wounds that Ryan Whitaker inflicted immediately necessary? Absolutely not." Error concerning improper argument is waived when the State made "substantially the same argument without objection." *Temple v. State*, 342 S.W.3d 572, 610 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). On that basis, we conclude this complaint is waived.[4]

### 3. Argument outside the record

Appellant next argues the trial court abused its discretion by overruling appellant's objection that the State argued facts not in evidence when discussing the lack of injuries on appellant's arm and hand. In response to appellant's objection of "assuming facts not in evidence," the trial court responded, "Stay within the record, Counsel." We conclude this statement is insufficient to preserve error, as it is unclear that the trial court adversely ruled against appellant. *See* Tex. R. App. P. 33.1(a)(2) (to preserve error, appellant must show trial court ruled on

---

[4] Moreover, the Penal Code standard for self-defense, as reflected in the trial court's charge, requires that a person is justified in the use of force "when *and to the degree* the actor reasonably believes the force is immediately necessary." Tex. Penal Code Ann. § 9.31(a) (emphasis added). The trial court might have concluded the prosecutor's comments as to whether each of appellant's actions was reasonable properly commented on this requirement that appellant use force only to a reasonable degree under the circumstances. *See State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998) ("We have long held that error in jury argument does not lie in going beyond the court's charge, but in stating law contrary to the same." (quotation omitted) (collecting cases)). Such a conclusion would be within the zone of reasonable disagreement. *See Milton v. State*, 572 S.W.3d 234, 241 (Tex. Crim. App. 2019) (rulings relating to propriety of closing argument are reviewed for abuse of discretion); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g) (explaining that, under abuse of discretion standard, "an appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement").

objection expressly or implicitly or refused to rule); *Ferree v. State*, 416 S.W.3d 2, 7 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (ambiguous response of trial court to objection "does not constitute an adverse ruling sufficient to preserve error"); *see also Graham v. State*, 566 S.W.2d 941, 954 (Tex. Crim. App. 1978) (no adverse ruling obtained and nothing preserved for review when, in response to defense counsel's objection, "the court instructed the prosecutor to confine his remarks to the record").

We overrule issue 2.

## C. Charge error

In issue 3, appellant argues he was egregiously harmed by the trial court's omission of an instruction on the presumption of reasonableness.

Penal Code section 9.32(b) states:

The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:

> (1) knew or had reason to believe that the person against whom the deadly force was used:

. . .

> > (C) was committing or attempting to commit an offense described by Subsection (a)(2)(B);

> (2) did not provoke the person against whom the force was used; and

> (3) was not otherwise engaged in criminal activity[.]

Tex. Penal Code Ann. § 9.32(b). If there is sufficient evidence giving rise to a presumption, such as the presumption here regarding the reasonableness of the actor's belief that deadly force was immediately necessary, the jury must be instructed on it. Tex. Penal Code Ann. § 2.05(b)(1). When a jury is instructed on

the presumption, the jury must also be instructed that "the presumption applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist" and, if the State fails to make such proof, then "the jury must find that the presumed fact exists." Tex. Penal Code Ann. § 2.05(b)(2)(A), (B). However, the trial court is not required to submit the presumption if "the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." Tex. Penal Code Ann. § 2.05(b)(1).

Here, three peace officers testified that appellant stated that Kincaid had attacked him with a knife. We conclude this is sufficient evidence to give rise to the trial court's duty to instruct the jury on the presumption.[5] *See* Tex. Penal Code Ann. § 2.05(b)(1).

When, as here, the defendant did not raise a timely objection to the challenged portion of the jury instructions, "reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Almanza*, 686 S.W.2d at 171.

The jury charge omitted the required instruction, and accordingly the first factor weighs in favor of egregious harm. However, the court of criminal appeals

---

[5] The State does not argue this evidence is insufficient to warrant an instruction on the presumption.

has explained that the weight of this factor is mitigated when "a complete jury charge on the presumption, in addition to describing the legal force of the presumption itself, would have also permitted the jury to conclude that the presumption was inapplicable based on the facts of this case." *Villarreal*, 453 S.W.3d at 433. Here, the jury might have concluded from the evidence that appellant was the aggressor, rendering the presumption of reasonableness immaterial.

The second factor considers the state of the evidence. The primary evidence supporting self-defense was appellant's self-serving statements that Kincaid had attacked him with a knife and that appellant was scared for his life. These statements are mitigated by the eyewitness testimony suggesting that appellant was the aggressor, including testimony that, after Kincaid broke free and ran away, appellant chased him down, tackled him, straddled him, and beat him, all in the course of attempting to give Kincaid a "Colombian necktie." *See id.* at 436 ("the mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm"). This factor weighs against egregious harm. *See id.* at 439 (factor weighed "substantially" against egregious harm when there was significant evidence that defendant was aggressor and, "save for appellant's own statements to police, none of the other evidence presented at trial supported a justification defense").

The third factor concerns the arguments of counsel. The question of who initiated the altercation was discussed far more in closing arguments than the question of the reasonableness of the force used by appellant. Appellant's lawyers focused almost exclusively on who the aggressor was, with barely a mention of whether the actions taken by appellant were reasonable. As one of appellant's lawyers put it, "I told you from the beginning what your decision was going to

13

have to be. Who started this fight and who had that knife first?" While the prosecutor discussed reasonableness in more detail, the focus of the State's argument likewise hinged on whether appellant or Kincaid initiated the altercation. We conclude this factor weighs against egregious harm.

As for the fourth factor, the record does not contain "other relevant information that may require consideration," such as "whether the jury rejected one of multiple counts or sent requests for clarification during deliberations." *See Smith v. State*, 515 S.W.3d 423, 431 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

Egregious harm must be based on actual, rather than theoretical, harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). Having reviewed the factors, while the trial court was required to give the instruction on the presumption of reasonableness, we conclude appellant did not suffer egregious harm from its absence. In particular, the evidence is such that the jury could have rejected the presumption even if the instruction had been given if they disbelieved appellant's statements that Kincaid attacked him. *See Villarreal*, 453 S.W.3d at 433, 436, 439 (no egregious harm despite omission of instruction on presumption of reasonableness). Accordingly, we cannot determine that actual, egregious harm resulted from the error.

We overrule issue 3.[6]

---

[6] Having overruled appellant's issues, we do not reach the State's "Cross-Point of Error." Tex. R. App. P. 47.1; *see* Tex. Code Crim. Proc. Ann. art. 44.01(c); *Pfeiffer v. State*, 363 S.W.3d 594, 601 (Tex. Crim. App. 2012) ("Usually, courts of appeals may address the State's cross-appeal point only if the defendant prevails on appeal and the case will be remanded for further proceedings.") (discussing *Armstrong v. State*, 805 S.W.2d 791, 793–94 (Tex. Crim. App. 1991)).

### III.   CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/     Charles A. Spain
        Justice


Panel consists of Justices Spain, Hassan, and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b).

15